**UNITED STATES v. MARTIN HOTEL CO. et al.**

**MARTIN HOTEL CO. et al. v. UNITED STATES.**

Nos. 9342, 9347.

Circuit Court of Appeals, Eighth Circuit.

May 18, 1932.

Ambrose C. Epperson, Asst. U. S. Atty., of Omaha, Neb., and E. T. Kemper, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Charles E. Sandall, U. S. Atty., of Omaha, Neb., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and C. C. McCormick, Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for the United States.

John E. Hughes, of Chicago, Ill., William Cogger, of Washington, D. C., and Kennedy, Holland & De Lacy, of Omaha, Neb., for Martin Hotel Co. et al.

Before VAN VALKENBURGH and SANBORN, Circuit Judges, and DAVIS, District Judge.

SANBORN, Circuit Judge.

In March, 1924, the collector of internal revenue for the District of Iowa assessed additional corporate income and profits taxes against the Martin Hotel Company for the year 1918 of $2,306.96, and for the year 1919 of $25,593.21; and against the M. & M. Hotel Company for the year 1918 of $2,338.31, and for the year 1919 of $13,525.12. He notified both companies of these additional taxes on March 18, 1924, and demanded their payment. Thereupon the taxpayers filed claims for the abatement of these taxes, and asked that collection be stayed. The assessments were transferred to the internal revenue collection district of Nebraska in June, 1924, at the request of the taxpayers. The Commissioner of Internal Revenue refused to consider the claims in abatement and to refrain from collecting the taxes unless their payment was secured. On July 10, 1924, in consideration of the postponement of proceedings to collect the taxes until the claims for abatement were determined, the taxpayers and E. C. Eppley, an officer of each of them, deposited with the Omaha National Bank, of Omaha, Neb., $48,000, in accordance with the terms of a declaration of trust or escrow agreement, which was delivered to the collector of internal revenue for the District of Nebraska as security for the payment of the additional taxes assessed or so much thereof as should ultimately be determined to be due. This agreement, which was, in effect, a cash bond, after reciting the assessment of the additional taxes, that they were due and collectible, and that the taxpayers had filed claims for their abatement, provided:

"Now, for the protection of the interests of the United States during the pendency of said claims of said Hotel Companies for abatement of said taxes, said Martin Hotel Company and said M. & M. Hotel Company by arrangements with said E. C. Eppley, have caused to be deposited with Omaha National Bank at Omaha, Nebraska, as Escrow Agent, the principal sum of $48,000.00 to be used in the payment of all such taxes hereinbefore referred to, as may eventually be determined by said Commissioner of Internal Revenue to be due from said Martin Hotel Company.and said M. & M. Hotel Company upon final consideration of said claims for abatement filed by said Martin Hotel Company and said M. & M. Hotel Company.

"Now, Therefore, this Declaration of Trust is made by said Omaha National Bank, Escrow Agent, for the purpose of stating the terms and conditions of said trust:

"1. Said principal sum of $48,000.00 so deposited with said Omaha National Bank as Escrow Agent hereunder, shall be held by said Escrow Agent until the final determination of said additional Corporation Income Taxes due from said Martin Hotel Company and said M. & M. Hotel Company for the years 1918 and 1919 is made by said Commissioner of Internal Revenue in accordance with the procedure prescribed by the law and regulations for such cases. Said final

adjustment and determination shall be certified to said Omaha National Bank by said Collector of Internal Revenue for the District of Nebraska and such certification shall be final with respect to fixing the liability of said taxpayers for the years in question."

The agreement then provides that if, within ten days after the final determination of the taxpayers' liability is made, they shall pay any and all additional corporation income taxes found due from them, or either of them, upon the final hearing of their claims in abatement, and shall exhibit to the escrow agent satisfactory proof of payment, the escrow agent shall deliver to them the principal sum; that if, at the end of ten days after the final determination of their tax liability, they shall not have paid the taxes found due upon final consideration of their claims, then, upon notice to that effect from the collector of internal revenue for the District of Nebraska, the escrow agent shall pay over to the said collector all of the principal sum of $48,000 that may be necessary to pay the additional taxes finally determined to be due from the taxpayers, together with any penalties or interest thereon, and shall pay over any balance remaining to the taxpayers.

In reliance upon this agreement, the government postponed proceedings to collect the additional taxes pending the consideration of the claims for abatement, and on August 24, 1925, the Commissioner of Internal Revenue considered those claims, and on that day advised the taxpayers that there remained unabated of the additional taxes of the Martin Hotel Company for the year 1918, $746.70, and for the year 1919, $14,518.48; and of the additional taxes of the M. & M. Hotel Company for 1918, $1084.64, and for 1919, $11,544.22; and advised them of their right to file a protest within thirty days. They filed such a protest, and he again considered their claims, but did not change his determination, and so informed them by letter of March 23, 1926. In that letter he advised them that, under section 274 of the Revenue Act of 1926, they were allowed sixty days in which to file an appeal with the Board of Tax Appeals, "contesting in whole or in part the correctness of this determination."

On October 5, 1927, the collector of internal revenue for the District of Nebraska certified in writing to the Omaha National Bank that a final adjustment and determination had been made by the Commissioner of Internal Revenue with reference to the additional taxes in question, and that none of the taxes had been paid as finally determined, and he demanded so much of the $48,000 deposited as was necessary to pay the taxes, with interest. This demand was not complied with.

The taxpayers did not appeal to the Board of Tax Appeals from the determination by the Commissioner of the deficiencies in their 1918 taxes, but did appeal from his determination of the deficiencies in the 1919 taxes. On January 15, 1930, the Board of Tax Appeals filed an opinion (see Martin Hotel Co. and Affiliated Corporations, Petitioners, v. Commissioner of Internal Revenue, Respondent, 18 B. T. A. 826) reciting that the taxpayers had set up the statute of limitations as a bar to the collection of the deficiencies in their taxes for the year 1919 as determined by the Commissioner, and that the Commissioner claimed that the escrow agreement was a waiver of the right of appeal to the Board or a waiver of the statute of limitations. The Board said: "With respect to the Martin Hotel Co. and the M. & M. Hotel Co., the questions presented are two: first, whether the so-called escrow agreement executed by them constitutes a waiver of their right to ask of this Board a review of the deficiencies finally determined against them, and, second, does that agreement, if not a waiver of jurisdiction, constitute a waiver of the statutory limitation against collection?"

And further:

"We hold that the agreement in question does not constitute a waiver of the right of these two taxpayers to appeal to the Board and that we have jurisdiction to entertain the appeal.

"In respect to the question raised that the escrow agreement constitutes a waiver of the statute of limitations, we see nothing in its terms to cause it to be considered as anything more than a personal bond with a cash deposit as security and having no more effect than bonds given in several other cases upon which we have passed in which a similar question has been raised. * * *

"We hold that the so-called escrow agreement of July 10, 1924, did not constitute a waiver of the five-year statute of limitations and, as the admitted facts show that the returns in question were filed more than five years prior to the date of the determination of the deficiencies in question and that the assessments were made prior to the enactment of the Revenue Act of 1924, that collection of these deficiencies is, upon author-

ity of Russell v. United States, supra [278 U. S. 181, 49 S. Ct. 121, 73 L. Ed. 255], now barred. This conclusion is not in conflict with the decision in the case of United States v. John Barth Co., 279 U. S. 370 [49 S. Ct. 366, 73 L. Ed. 743]. As we read that case it involves solely the question of the defendant's liability under suit brought upon the obligation created by the execution of a bond under a specific provision of the taxing act, not here involved, calling for such bond and granting the taxpayer a stay of collection in cases where it was furnished. In the proceeding before us we consider the so-called escrow agreement only for the purpose of determining whether it constitutes a waiver of jurisdiction, or a waiver of the statutory limitation in respect to collection of the tax as such, and we do not pass upon the question as to whether these taxpayers have liabilities under the escrow agreement and created thereby."

The Board then ordered that a decision be entered "that collection of the deficiencies determined in respect to these * * * petitioners is now barred by the statute of limitations." The decision and order of the Board, so far as is here material, is as follows:

"In accordance with the findings of fact and opinion of the Board of this proceeding of January 15, 1930, it is hereby * * * ordered and decided, that for the calendar year 1919 there is no deficiency in income or profits taxes in respect to any of the following petitioners herein:

"Martin Hotel Company
Sioux City, Iowa,
"M. & M. Hotel Company
Cedar Rapids, Iowa. * * * "

No appeal was taken from this decision.

The government brought suit against the bank, as escrow agent, joining Mr. Eppley and the taxpayers, to recover so much of the deposit as equalled the amount of the additional taxes as finally determined by the Commissioner, with interest. The defense against the claim so far as it was based on the 1918 taxes was that they were outlawed when the escrow agreement was made, and, so far as it was founded upon the 1919 taxes, that the Board of Tax Appeals had determined that there was no deficiency in such taxes. The case was tried without a jury. The court held the bank liable as to the amount of the 1918 taxes and interest, but was of the opinion that the decision of the Board of Tax Appeals that there was no deficiency in the 1919 taxes precluded the

government from recovering the amount of those taxes and interest under the terms of the escrow, and that therefore the taxpayers were entitled to all of the $48,000 deposited, except so much as was required to cover the 1918 taxes. Both sides appealed, but the correctness of the court's decision as to the 1918 taxes is now conceded, and the dismissal of appeal No. 9347 is consented to. We are therefore only concerned with that portion of the judgment of the court below which denies to the government the right to recover under the escrow the amount of the 1919 taxes and interest.

The escrow agreement of July 10, 1924, was for the protection of the interests of the United States during the pendency of the claims for abatement. The deposit was "to be used in the payment of all such taxes hereinbefore referred to as may eventually be determined by said Commissioner of Internal Revenue to be due * * * upon final consideration of said claims for abatement." The escrow agent was to hold the deposit "until the final determination of said additional corporation income taxes due from said Martin Hotel Company and said M. & M. Hotel Company for the years 1918 and 1919 is made by said Commissioner of Internal Revenue in accordance with the procedure prescribed by the law and regulations for such cases." The final adjustment and determination was to "be certified to said Omaha National Bank by said Collector of Internal Revenue for the District of Nebraska," and such certification was to "be final with respect to fixing the liability of said taxpayers for the years in question." If the taxpayers failed to pay the taxes ten days after final determination, the bank was to pay over so much of the deposit as should be necessary to cover the taxes, with interest and penalties.

The Commissioner made a determination of the amount of the additional taxes upon a final consideration of the claims for abatement. This final determination was certified to the bank by the collector. The taxpayers did not pay the taxes within the ten days specified, and the bank did not pay them out of the deposit.

It is now conceded that the certification by the collector was final as to the 1918 taxes, since no appeal was taken from the determination of the Commissioner with respect to them, but it is contended that it was not final as to the 1919 taxes, with reference to which the Board of Tax Appeals found no deficiency.

Assuming that the taxpayers might impeach the certificate of the collector in spite of their agreement as to its finality, and assuming that the agreement contemplated that the determination by the Commissioner should be subject to review by the Board of Tax Appeals, and that its determination should be deemed to be his determination, we think it still does not appear that the government was not entitled to recover. The escrow agreement referred to a tax liability of the taxpayers for the years 1918 and 1919 as it existed July 10, 1924, and was intended to secure the payment of the taxes which were then due and subject to collection, but the amount of which was then in dispute. There was at that time no controversy between the government and the taxpayers with reference to the collectibility of the taxes, but only as to their amount. The agreement and the deposit made thereunder protected the government in foregoing its remedies for the collection of the taxes and left it with a secured claim for an amount equal to what should finally be determined was the correct amount owed by the taxpayers as corporate income taxes for the years 1918 and 1919, and interest.

The Board of Tax Appeals never passed upon the question of the amount of additional income taxes owed by the taxpayers for the year 1919. It failed to do this for the reason that the taxpayers asserted that the collection of the deficiencies as ultimately determined was barred by the statute of limitations, and the Board specifically passed upon no other issue, and concluded that there was no deficiency in those years because the collection of the taxes as such was then barred. The decision which was entered by the Board was no broader than its opinion and findings, and was in conformity with section 601 of the Revenue Act of 1928, amending § 906 (e) of the Revenue Act of 1924 as added by § 1000 of Revenue Act of 1926 (c. 852, 45 Stat. 871, 872 [26 USCA § 1217(e)]) which provided: "If the assessment or collection of any tax is barred by any statute of limitations, the decision of the Board to that effect shall be considered as its decision that there is no deficiency in respect of such tax."

Had the Board of Tax Appeals determined that, upon the merits, there were no deficiencies in corporate income taxes for the year 1919, there might be some substantial basis for holding that its decision must, under the terms of the escrow agreement, be regarded as the final determination of the Commissioner, and that therefore the certifi-

cation by the collector did not fix the taxpayers' liability or the obligation of the bank under the escrow agreement, regardless of the fact that the agreement provided that such certification was to be final. Considering, however, the substance of what was decided by the Board, and disregarding mere form, the action of the Board constitutes nothing more than a finding that the liability of the taxpayers for additional taxes for 1919, as determined by the Commissioner, was no longer enforceable as such. It did not disturb the determination of the Commissioner as to the amount of additional taxes which were due and unpaid for the year 1919, and the payment of which was secured by the deposit. It is our opinion that the Commissioner's determination, certified to the bank by the collector of internal revenue, must stand as fixing the liability of the taxpayer under the provisions of the escrow agreement, and that the decision of the Board of Tax Appeals had no effect upon the right of the government to have recourse against the deposit in the hands of the bank.

In the case of Gulf States Steel Co. et al. v. United States, 56 F.(2d) 43, the Circuit Court of Appeals of the Fifth Circuit had before it substantially the same question that is presented here. The court said (page 44):

"The appeal presents the single question whether the finding by the Board of Tax Appeals on a petition for redetermination of deficiency filed after the commissioner had rejected the taxpayer's claim for abatement, that 'there is no deficiency for the year 1917, because the statutes of limitation have run against the collection,' abated the additional assessment within the meaning of the bond.

"The District Judge concluded that it did not. He was of the opinion that the finding of the board had the effect not at all of abating any part of the tax, but of formally declaring that, because barred, it was not collectible. He was of the opinion that the finding of the board that limitation had run added nothing to the fact that it had, and that the case was ruled by United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743. We are of the same opinion. That case held: 'The making of the bond gives the United States a cause of action separate and distinct from an action to collect taxes which it already had. * * * The postponement of the collection of the taxes returned was a waiver of the statutory limitation of five years that would have applied had the voluntary return of the taxpayer

stood, and no bond been given.' Page 375 of 279 U. S., 49 S. Ct. 366, 367. And that: 'The object of the bond was not only to prevent the immediate collection of the tax but also to prevent the running of time against the government. The taxpayer has obtained his object by the use of the bond, and he should not object to making good the contract by which he obtained the delay he sought.' Page 376 of 279 U. S., 49 S. Ct. 366, 367."

We think that the case before us is also ruled by the case of United States v. John Barth Co., above referred to.

Appeal No. 9347 is dismissed, and in appeal No. 9342, so much of the judgment as is appealed from is reversed, and the case remanded for further proceedings not inconsistent with this opinion.